**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| DIANE MARSHALL , | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  1:05cv386-WHA |
| | ) | |
| | ) | (WO) |
| DALEVILLE CITY BOARD OF | ) | |
| EDUCATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment (Doc. #32) and a Motion to Strike Hearsay Statements Contained in Plaintiff's Response to Motion for Summary Judgment (Doc. #47) filed by the Daleville City Board of Education and Superintendent Andrew R. Kelley.

The Plaintiff, Diane Marshall, originally filed a Complaint in this case on April 26, 2005, bringing claims against the Daleville City Board of Education.  The Plaintiff then filed a Motion to Amend the Complaint, which was granted by this court.  The Plaintiff asserts claims for violation of Title VII of the Civil Rights Act of 1964, as amended; 42 U.S.C. § 1981 through 42 U.S.C. § 1983; and the Fourteenth Amendment of the United States Constitution, through 42 U.S.C. § 1983, against the Daleville City Board of Education and Andrew R. Kelley.

For the reasons to be discussed, the Motion to Strike is due to be GRANTED in part and DENIED as moot in part, and the Motion for Summary Judgment is due to be GRANTED in part and DENIED in part.

## II.  <u>SUMMARY JUDGMENT STANDARD</u>

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Id.</u> at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. <u>Id.</u> at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id.</u> at 324.  To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. <u>See Anderson v. Liberty Lobby</u>, 477 U.S. 242, 255 (1986). After the nonmoving party has responded

to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The summary judgment rule is to be applied in employment discrimination cases as in any other case. Chapman v. A1 Transport, 229 F.3d 1012, 1026 (11th Cir. 2000)(en banc).

## III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

The Plaintiff, Diane Marshall, is currently the Assistant Superintendent of the Daleville City schools.  She has been employed with the Daleville City school system for over twenty years.  She began as a guidance counselor and later became Principal of Daleville High School before being named Assistant Superintendent. She alleges that she was denied the position of Athletic Director on the basis of her gender and race while she was Principal of Daleville High School.  She also claims that she was initially denied the position of Assistant Superintendent on the basis of her gender and race.  She further claims that she was denied the Superintendent position on the basis of her gender and race.  Finally, she contends that although she was named Assistant Superintendent, many of her duties were taken away and she was not allowed to participate in decision making in retaliation for complaining about gender and race discrimination.

## IV. DISCUSSION

The Defendants have moved for summary judgment as to three disparate treatment claims and one retaliation claim.  The court will address each in turn.

3

Disparate Treatment on the Basis of Race/Gender

1. Assistant Superintendent and Superintendent

Marshall contends that the selections of Andrew Kelley over her, first as assistant superintendent and then as superintendent, were race and gender based. The Defendants move for summary judgment on several bases, one of which is that Marshall's claims are time-barred.

Claims asserted pursuant to Title VII must be presented in a charge of discrimination to the EEOC within 180 days of the complained of employment action. 42 U.S.C. § 2000e-5(e); Delaware State College v. Ricks, 449 U.S. 250, 256 (1980).  There has been some change in the law regarding the statute of limitations for § 1981 claims.  See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 371 (2004).  Section 1981 claims against state actors must be brought pursuant to § 1983, however.  Butts v. County of Volusia, 222 F.3d 891, 892-94 (11th Cir. 2000).  Therefore, the statute of limitations for a § 1981 claim asserted pursuant to § 1983 is governed by state law.  Palmer v. Stewart Co. School District, No. 05-15721, 2006 WL 1275850 (11th Cir. May 10, 2006)(unpublished opinion).  Therefore, Alabama's two-year statute of limitations applies to the § 1983 claims in this case.  Jones v. Preuit & Mauldin, 876 F.2d 1480, 1483 (11th Cir.1989).

The Defendants state that Kelley was appointed assistant superintendent in 2002 and was appointed superintendent in 2003, but that Marshall's EEOC charge was not filed until November 2004, and the Complaint in this case was filed in April, 2005.  The Defendants contend, therefore, that Marshall's claims arising from the assistant superintendent position filled in 2002 and the superintendent position in 2003 are time-barred because they occurred more than

180 days before she filed her EEOC charge and more than two years before she filed her

Complaint.

Marshall responds that her claims based on denial of the superintendent and assistant superintendent positions are not time-barred.[1]  Marshall advances three theories.  First, Marshall says that the denials of these promotions are a series of related acts, citing <u>Roberts v. Gadsden Mem'l Hosp.</u>, 835 F.2d 793, 800 (11th Cir. 1988).

In <u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002), the Supreme Court drew a distinction between discrete acts of discrimination and hostile environment claims. With respect to the former, the Court stated that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice."  <u>Morgan</u>, 536 U.S. at 114.  While that case was decided within the context of the requisite period for filing EEOC charges, it is also instructive on the scope of the concept of a "continuing violation" for purposes of the § 1981 statute of limitations theory.  <u>Gonzalez v. Firestone Tire & Rubber Co.</u>, 610 F.2d 241, 251 (5th Cir.1980).[2] The Eleventh Circuit has previously held, and recently re-affirmed in an unpublished opinion applying <u>Morgan</u>, that the denial of a promotion is a one time violation, the present

---

[1]  Marshall concedes that her race and gender Title VII claims based on denial of the Assistant Superintendent position in 2002 are barred, but argues that her § 1981 and equal protection claims based on the denial of that position are not time-barred.  Plaintiff's Response, page 21 n. 15.

[2] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir.1981) (<u>en banc</u>), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

consequences of which only are felt at the present time, and not a continuing violation.  See Roberts v. Gadsden Memorial Hosp., 835 F.2d 793 (11th Cir.1988), modified, 850 F.2d 1549 (11th Cir.1988); Price v. M&H Valve Co., No. 05-15205, 2006 WL 897231 (11th Cir. April 7, 2006) (unpublished opinion).  In addition, this court has previously rejected a theory that repeated denials of promotion was a continuing violation for purposes of a Title VII, §1983, and § 1981 claim. Smith v. Alabama Dept. of Corrections, 131 F. Supp. 2d 1318, 1321 (M.D. Ala. 2001); see also Sanders v. City of Montgomery, 319 F. Supp. 2d 1296, 1310 (M.D. Ala. 2004). Marshall's first continuing violation theory, therefore, is unavailing.

Second, Marshall states that because she was repeatedly denied promotional opportunities as a part of a governmental policy and custom her claims are not time-barred.[3] Although it is not the explicit holding of Morgan, it appears to this court that the theory advanced by Marshall is foreclosed by Morgan.  In Morgan, the Court explained that two theories of continuing violations had been developed by lower courts; namely, a series or related acts or a systemic policy or practice of discrimination.  Morgan, 536 U.S. at 107.  The Court in Morgan, however, rejected those approaches by drawing a distinction between discrete acts of discrimination, each of which is an employment practice and which cannot form the basis of a continuing violation, and acts of harassment, each of which may not be separately actionable, but only taken together can form an employment practice.  Id. at 114-16.  Under this court's reading

---

[3] Although Marshall has argued that she was denied a promotion due to a policy and custom of the Defendants, she as an individual is not asserting a pattern and practice claim. A pattern and practice claim can be brought either "by the EEOC if there is reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of discrimination . . . or by a class of private plaintiffs under 42 U.S.C. § 2000e."  EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000) (quotation and citations omitted).

of Morgan, therefore, each denial of a promotion is a discrete employment practice and must be the subject of a timely EEOC charge.

To the extent that Marshall relies on decisions of this court and others which pre-date Morgan, this court must conclude that Morgan has clarified the concept of a continuing violation, and Marshall's theory that she has alleged a continuing violation through multiple denied promotions is inconsistent with the law of continuing violations.

Third, Marshall contends that the claim based on denial of the Superintendent position did not accrue in March 2003 because Kelley was appointed to serve in an interim capacity at that time and only was appointed to assume the actual superintendent position on May 19, 2004.

Marshall's statement of facts in her brief with regard to this position is that during a Board meeting held on March 27, 2003, a Board member moved that Kelley assume the position of "next superintendent" upon the retirement of Eddie Hill, who was serving as superintendent at that time.[4]  While Kelley served as "next superintendent," he was performing some assistant superintendent duties and some superintendent duties.  McLin Dep. at pages 94-5.  As Board member Richard McLin ("McLin") described Kelley's position in a portion of his deposition submitted to the court, "[w]hen Mr. Kelley knew that he was going to be the next superintendent, then he could go to superintendent meetings . . . [and] do things that weren't available to him as the assistant superintendent."  Id. at page 95:19-96:3.  During a May 19, 2004 Board meeting,

---

[4] Marshall contends that Hill's resignation was not accepted at that time because of the school system's obligations under a consent decree unrelated to the instant case, whereas the Defendants state that Hill tendered a resignation because of issues of his residency, but was allowed to serve out the remainder of time necessary to enter a state retirement program.  In any event, Hill remained as superintendent after the decision was made to appoint Kelley as the next superintendent.

McLin recommended that Kelley be named superintendent and the recommendation was approved.  Kelley fully assumed the duties of superintendent in August 2004.  Marshall Dep. at page 122: 2-7; Plaintiff's Exhibit 18.

Marshall urges the court to find that she was not subject to an injury until May 19, 2004 when Kelley was actually appointed by the Board.  The limitations period begins to run when an employee receives notice of the alleged discriminatory act, "not the point at which the consequences of the act become painful." Chardon v. Fernandez, 454 U.S. 6, 8 (1981); see also Grayson v. K Mart Corp., 79 F.3d 1086, 1100, n. 19 (11th Cir.1996) ("[T]he time for filing an EEOC charge begins to run when the employee receives unequivocal notice of the adverse employment decision.").

This court concludes that even drawing all reasonable inferences in favor of the non-movant, the evidence before the court is that the decision to hire Kelley as superintendent was made in 2003, and that the decision was intended not to become fully effective until Hill retired. Therefore, although the decision became effective in 2004, the decision had been made in 2003. Marshall attended the Board meeting where the decision was made and complained about it to Hill.  When asked why she did not file a claim at the time of the 2003 decision, Marshall answered that she did not know why.  Marshall Dep. at 122:2-19.  The court concludes, therefore, that the appointment of Kelley in 2003 to become the replacement for Hill in 2004 occurred in 2003, that it was known then by Marshall, and that a charge of discrimination should have been filed within 180 days of the 2003 date and the Complaint filed within two years of the 2003 date.  Therefore, the court concludes that all of the claims based on failure to promote to

assistant superintendent and superintendent are time-barred, and the court need not address the other grounds for summary judgment raised by the Defendants as to these positions.

2.  Athletic Director

Marshall contends that she can establish a direct evidence claim of discrimination on the basis of gender in the denial of the athletic director position.[5]  Lester Nichols ("Nichols"), a white man, was selected for the position of Athletic Director.

The Eleventh Circuit has held that "[d]irect evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption. Therefore, remarks by non-decision makers or remarks unrelated to the decision making process itself are not direct evidence of discrimination." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir.1998) (citations omitted).  "[D]irect evidence relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee."  Carter v. Three Springs Residential Treatment, 132 F.3d 635, 641 (11th Cir. 1998).

Marshall states she has presented direct evidence of discrimination in the form of a statement by Mr. Gurley, a parent of a student.  Marshall states in her own deposition that Gurley told her that he had asked Kelley who would fill the athletic director position and that Kelley said that he would never have a female as an athletic director.  This statement by Marshall is the subject of a Motion to Strike filed by the Defendants.

---

[5] Such claim would be asserted under Title VII and § 1983 as an equal protection violation, but not under § 1981, which only prohibits discrimination on the basis of race.

The Defendants have contended that because Marshall has not offered an affidavit by Gurley, but has merely testified herself to Gurley's report of Kelley's alleged statement, the statement is hearsay, not subject to any exception.  <u>See</u> Fed. R. Evid. 801(c).

There are two statements at issue here:  an alleged statement from Kelley to Gurley and the statement from Gurley to Marshall.  Under the federal rules, "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Fed.R.Evid. 805; <u>see also</u> <u>Zaben v. Air Products & Chemicals, Inc.</u>, 129 F.3d 1453, 1456-57 (11th Cir.1997).  Marshall's deposition testimony, therefore, constitutes double-hearsay, each portion of which must be subject to an exception to be considered in opposition to the Motion for Summary Judgment. <u>McMillian v. Johnson</u>, 88 F.3d 1573, 1583-85 (11th Cir.1996), <u>aff'd</u>, 520 U.S. 781 (1997).

The statements made by Kelley to Gurley would be statements of a party opponent and not hearsay under Fed.R.Evid. 801(d)(2)(A).   The statements from Gurley to Marshall, however, are hearsay and not subject to any exception.  Marshall's argument is that her testimony as to Gurley's statement about Kelley's statement is admissible because it may be reduced to admissible form.

The Eleventh Circuit has explained that otherwise admissible evidence may be considered at summary judgment if it is merely offered in an inadmissible form. <u>Id.</u> at  1584.  Marshall states that Gurley's statement is admissible because she "may reduce it to admissible evidence at trial via the live testimony of Mr. Gurley."  Plaintiff's Response at page 4.  Marshall does not, however, provide the court with an affidavit from Gurley, and when asked in her deposition, states that Gurley has never given her a written or taped statement that Kelley made

the statement alleged.  Marshall Dep. at page 177 :17-22.  This court must conclude, however, that Marshall must do more, in opposing summary judgment, and in opposing a Motion to Strike, than merely state that she "may" reduce the statement to admissible form through Gurley's testimony at trial.  Therefore, the Motion to Strike is due to be GRANTED as to Marshall's testimony as to Gurley's reporting of what Kelley said.[6] Therefore, the court will not consider the statement in evaluating the Motion for Summary Judgment, and finds that Marshall has failed to adduce direct evidence of gender or race discrimination.

 Merely because Marshall does not have direct evidence of discrimination does not necessarily mean, however, that the Defendants are entitled to summary judgment on her claim, because she may also establish a claim of discrimination by using circumstantial evidence of discriminatory intent.

Where, as here, the plaintiff seeks to prove intentional discrimination on the basis of race[7] under Title VII, § 1981 and the equal protection clause by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Stallworth v. Shuler, 777 F.2d 1431, 1433 (11th Cir. 1985).  Under this framework, the plaintiff must establish a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802.  After the plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a

---

[6] The Motion to Strike is due to be DENIED as moot as to other challenged testimony which the court has not considered in ruling on the Motion for Summary Judgment.

[7] The same analysis also applies to the theory that the position was denied Marshall on the basis of her gender, but that claim is only asserted under Title VII and the equal protection clause.

legitimate nondiscriminatory reason for its employment action.  Texas Dept. of Community

Affairs v. Burdine, 450 U.S. 248, 254 (1981).  The plaintiff may seek to demonstrate that the

proffered reason was not the true reason for the employment decision "either directly by

persuading the court that a discriminatory reason more likely motivated the employer or

indirectly by showing that the employer's proffered explanation is unworthy of credence."  Id. at

256; Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997).  A plaintiff's prima

facie case, combined with sufficient evidence to find that the employer's asserted justification is

false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000).

     The Defendants have assumed for purposes of their summary judgment motion that

Marshall can make out a prima facie case of race and gender discrimination in denial of the

athletic director position.  The Defendants articulate as their legitimate non-discriminatory

reasons for the selection of Nichols for that position that the candidate selected was more

qualified, interviewed better, and had plans for the position. Kelley has also stated that he wanted

to separate the functions of athletic director and principal so that two people would be reviewing

athletic matters.

     Marshall contends that the assertion that Nichols had more experience, interviewed

better, and had plans for the position are subjective criteria and do not meet the standard for

articulation of legitimate non-discriminatory reasons.  She states that no objective indicators of

any kind have been submitted by the Defendants by which she can measure the Defendants'

vague and subjective opinions.  The Defendants do not respond to this argument, arguing instead

that Marshall cannot prove that the disparities in qualifications are of such weight and

significance that no reasonable person could have chosen the candidate selected.

A subjective reason can be sufficient as a legitimate non-discriminatory reason if the

defendant articulates a clear and reasonably specific factual basis upon which it based its

opinion. Chapman v. AI Transport, 229 F.3d 1012, 1034 (11th Cir. 2000).

In support of the articulated reasons, the Defendants have cited to the response by the

Defendants to the EEOC which simply states that Nichols was selected because of his

experience, interview, and plans for the position.  Defendant's Exhibit B.  The Defendants

attached to this letter typed documents which indicate that they are interview responses of

Marshall and Nichols.  Without some guidance as to what aspect of the interviews was

considered to be significant, however, the court declines to attempt to make an independent

determination as to relative quality of the interview or the merits of the candidates' plans for the

future.

The stated reliance by Kelley on Nichols' experience in athletics, however, is

substantiated by the evidence without additional elaboration.  The interview responses relied on

by Kelley indicate that Nichols had experience in athletics in Daleville in the areas of football,

basketball, weightlifting, and track, while Marshall's experience in athletics is limited to a role

as a parent, educator, and spectator at athletic events.  See Defendants' Exhibit D.

Marshall argues that the reliance on previous athletic experience is prextextual.  She

states that the posted job duties of the Athletic Director position do not require coaching

experience or ability, but are instead administrative functions and coaching is not a prerequisite

for the position.  Marshall also states that, as principal of the high school, she was ultimately in

charge of and responsible for athletics under the rules of the Alabama High School Athletic Association ("AHSAA").  Marshall argues, therefore, that a reasonable juror could find that the reasons given did not actually motivate the decision at the time.

A plaintiff may seek to prove that an articulated reason is pretextual by pointing out "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action." Cooper v. Southern Co., 390 F.3d 695, 725 (11th Cir. 2004); see also Combs, 106 F.3d at 1538.

Marshall has testified that both she and Nichols possessed the required qualifications set forth in the position announcement. Marshall Dep. at page 186:17-188: 4.  The issue before this court, therefore, is whether reliance on experience in athletics as a qualification for the athletic director position is so weak, implausible, inconsistent, incoherent, or contradictory so as to make it unworthy of credence. Combs, 106 F.3d at 1538.

It may be that the job duties of athletic director could be performed adequately by someone with no athletic experience.  Kelley determined, however, that athletic experience was a factor in Nichols' favor.  It  "is the employer's role, not the role of the court, to 'identify those strengths that constitute the best qualified applicant.' " Haley v. Potter, No. Civ. A. 2:03cv398-SRW, 2006 WL 861350, *4 (M.D. Ala. March 31, 2006) (quoting Kincaid v. City of Omaha, 378 F.3d 799, 805 (8th Cir.2004)).  Although the position duties in this case are administrative and not of a coaching nature, previous athletic experience could reasonably be related to several of the duties listed in the position announcement; for example, knowledge of Alabama High School Athletic Association Rules, recommending athletic purchases and expenditures, and working with athletic booster club.  See Defendant's Exhibit 17.  Therefore,

the court cannot conclude that the nature of the job duties at issue means that reliance on previous athletic experience was weak, implausible, inconsistent, incoherent, or contradictory so as not to be worthy of credence.

Admittedly, the listed requirements for the job in the position announcement do not list previous athletic experience. It may be that under different facts, not currently before the court, this court would agree that a plaintiff may establish pretext where an employer relies on a qualification that was not listed in the position announcement, such as a case in which the successful applicant also has a deficiency in the minimal requirements.[8] In this case, however, Nichols met the minimal requirements for the position. Furthermore, the evidence presented of the questions asked during the interviews for the position indicates that athletic experience was a consideration explored during the interview process, and not merely pointed to as a consideration after the selection had been made. Therefore, this court cannot conclude that the reason articulated is so weak, implausible, inconsistent, incoherent, or contradictory so as to establish pretext.

Marshall also disputes, on the basis of the timing of the determination, the articulated reason that Kelley wanted to separate the functions of athletic director and principal so that two people would be reviewing athletic matters. This court need not reach that issue because "when

---

[8] One example of this which has been recognized in a case outside of this circuit is Shelton v. Northwestern Memorial Hosp.,130 F. Supp. 2d 1001, 1005 (N.D. Ill. 2001) in which the court stated, "a reasonable jury could conclude that because the purported need for technical safety experience was not included in either the job posting or description, and because plaintiff's experience in support services (which was included in the job posting and description) exceeded that of Young, defendant's fourth reason for not promoting plaintiff is pretextual."

a defendant has articulated several different reasons for an employment action, a plaintiff must demonstrate that each of the proffered reasons is unworthy of credence in order to establish pretext." Lewis v. Chattahoochee Valley Community College, 136 F. Supp. 2d 1232, 1239 (M.D. Ala.2001) (citing Combs, 106 F.3d at 1538). Marshall has failed to establish pretext as to the articulated reason that Nichols was hired because his experience with athletics made him more qualified. Summary judgment is, therefore, due to be GRANTED as to all claims arising from the appointment of athletic director.

Retaliation

To establish a prima facie case of retaliation a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1454 (11th Cir.1998).

The Defendants contest that Marshall can show that she suffered an adverse employment action. Although the Defendants concede that the job responsibilities of the assistant superintendent position were altered, they state that Marshall cannot demonstrate an adverse employment action because the alteration of employment responsibilities of the assistant superintendent position occurred before the job was posted and before she applied.

The requirements of a Title VII retaliation claim have recently been examined by the Supreme Court, in Burlington Northern v. White, __ U.S. __, 2006 WL 1698953 (June 22, 2006).[9] The Court held that the standard for evaluating an adverse employment action in the

_____

[9] Although the Supreme Court's decision was after the Motion for Summary Judgment was filed in this case, the parties have briefed the application of it to the facts in this case.

16

context of a Title VII retaliation claim is that a plaintiff must show that a reasonable employee would have found the challenged action materially adverse.  Id. at *10.  "Materially adverse" has been defined as being that the action might have dissuaded a reasonable worker from making or supporting a charge of discrimination.  Id. The Court further explained that reassignment of job responsibilities can constitute discrimination for purposes of a Title VII retaliation claim.  Id. at *12.

    Marshall argues that she was aware at the time she applied for the assistant superintendent position that it would include C.N.P. duties, but that once she began performing the duties of assistant superintendent, she was only performing secretarial duties associated with the C.N.P. position.  Marshall has provided a declaration in which she states that she is not invited to attend Administrative Meetings, and that she has not been informed of decisions which affect programs such as federal programs and the C.N.P. program.  Marshall Declaration at ¶¶ 4, 6.  With regard to other duties of her position, Marshall said that she does testing duties.  Marshall Dep. at page 72: 24.  She also said that she is "going to have federal programs."  Id. at page 73: 8.  She agreed that community education is part of her duties.  Id. at 73: 9-11.  Marshall contends, however, that she had some of the traditional duties of her position taken away from her.

    Kelley was asked in his deposition what duties he performed when he held the position of assistant superintendent.  He listed transportation, federal programs, testing, community education, PEPE coordinator, Children's First, and professional development.  Kelley Dep. at page 32: 12-21.  He also stated that as part of federal programs, he was responsible for comprehensive school grants.  Id. at page 56: 2-3.  Kelley was asked to assign percentages of

17

time spent on various tasks to the duties he performed when he was assistant superintendent. This testimony was as follows: PEPE coordinator--5%, Children's First funding--3%, the capital plan--3-4%, and professional development, federal programs director, and comprehensive school grants together as one group--30-31%.  Id. at pages 47:23, 59:18-19, 57:22-23, 56:9-12.

Kelley also testified in his deposition as to the current duties of the assistant superintendent position.  He states that the assistant superintendent is responsible for federal programs, the nutrionist job, community education, and is the testing coordinator.  Id. at page 68: 1-14.  Kelley also states in his deposition that as superintendent he is the coordinator of PEPE and Children's First, and that he coordinates professional development with Marshall.  Id. at page 68:18-69: 8.   He states that duties of the comprehensive school grant program which falls under the federal programs coordinator are being performed by an elementary school principal. Id. at 70: 8-14.

The Defendants' characterization of the evidence regarding Marshall's duties is that the only changes to the assistant superintendent job as assumed by Marshall were the addition of C.N.P. duties, the addition of a full-time C.N.P. secretary, and the deletion of transportation duties, and that Marshall knew about these changes in advance, and is getting more money than the previous assistant superintendent.  A comparison of the job duties of Marshall with the job duties Kelley said he performed as assistant superintendent, however, reveals that there are other differences in the position as performed by Kelley and as performed by Marshall.  Duties performed by Kelley as assistant superintendent which apparently are not being performed by Marshall include the PEPE coordinator duties, capital plan duties, Children's First duties, and at least some aspects of comprehensive school grants program, which along with other federal

programs duties was stated by Kelley to have comprised 30-31% of his job duties as assistant superintendent.

Because the Defendants' position in their briefs is that the only changes in the assistant superintendent position were the removal of transportation and the addition of C.N.P. duties, and because Marshall has directed her briefing toward disputing that characterization, the court has not been presented a comprehensive picture of what Marshall's duties as assistant superintendent are. Marshall has presented evidence which indicates that duties (other than transportation) which had been performed by Kelley as assistant superintendent are no longer duties of that office. Marshall also has stated in a declaration that she is not involved in decision-making, even with respect to the programs she supervises. Viewing all evidence in a light most favorable to the non-movant, the court finds it reasonable to conclude that between 10% and 30% of the duties formerly associated with her position are being performed by others, and Marshall spends much of her time supervising a program not previously included in the position which she knew would be a part of the job, but has not been allowed to participate in decision making regarding that program, and has also not been allowed to make decisions regarding other programs she supervises. Therefore, drawing all reasonable inferences in Marshall's favor, this court cannot conclude as a matter of law that no "jury could reasonably conclude that the reassignment of responsibilities would have been materially adverse to a reasonable employee." Burlington, 2006 WL 1698953 at *12. Therefore, the court concludes that Marshall has established a prima facie case of retaliation.

The Defendants argue that even assuming that Marshall can establish a prima facie case of retaliation, she has not rebutted their legitimate non-discriminatory reason that the assistant

superintendent position was re-structured to combine the C.N.P. duties with the assistant superintendent position for financial reasons.  As Marshall points out, however, this reason does not address why PEPE coordinator, capital plan, Children's First, and comprehensive school grants duties performed by Kelley as assistant superintendent have not been assigned to Marshall as assistant superintendent.  No explanation has been articulated to this court for why Marshall is not performing PEPE Coordinator duties, capital plan duties, Children's First duties, or comprehensive school grants duties previously performed by assistant superintendents. Therefore, at this stage in the proceedings, the Defendants have failed to meet their burden of articulating a legitimate non-discriminatory reason for the challenged employment action, and summary judgment is due to be DENIED as to the Title VII retaliation claims.

With respect to the § 1983 claims brought, the Defendants have asserted the defenses of qualified immunity as to the claims against Kelley, and the lack of policy or custom as to the claims against the Board.  These arguments need not be addressed with respect to any equal protection retaliation claim, however, because there is no clearly established constitutional prohibition against retaliation. Ratliff v. DeKalb County, Ga., 62 F.3d 338, 340 (11th Cir.1995). Summary judgment is, therefore, due to be GRANTED to the extent that Marshall brings equal protection retaliation claims.

With respect to the § 1981 claim as asserted through § 1983,[10] Marshall asserts that the Defendants have not invoked the defense of qualified immunity with respect to any § 1981

---

[10]  Burlington is a case of statutory interpretation under Title VII.  The parties, however, have not argued that the "materially adverse" standard described in Burlington is limited to Title VII.  Cf.  Browne v. Potomac Elec. Power Co., No. 05-1177 (RWR), 2006 WL 1825796, *2 D.D.C. July 3,2006) (applying Burlington to a § 1981 claim).  Therefore, the court does not reach this issue and moves to the remaining issues of establishing liability under § 1983.

retaliation claim.  Marshall, therefore, has not directly responded to any invocation of qualified immunity with respect to retaliation.  Because the Defendants' brief refers to qualified immunity as to "the claims incorporating sec. 1981," Brief in Support of Summary Judgment at page 27, however, the court will consider qualified immunity invoked as to the retaliation claim.  The court, therefore, will apply to the retaliation claim the Defendants' arguments, as well as Marshall's, which have been raised with respect to qualified immunity as to any § 1981 claims.

The Defendants state that claims against Kelley individually are barred under § 1981. There are circumstances, however, under which individuals can be held liable under § 1981. See e.g., Leige v. Capitol Chevrolet, Inc.,895 F. Supp. 289, 293 (M.D. Ala.1995) (supervisors with the capacity to hire and fire or those who can recommend such decisions are subject to liability under § 1981).  In this case, Kelley was the supervisor who determined what duties would be performed by the assistant superintendent,[11] so he can be held individually liable under § 1981. Id.  Furthermore, it was clearly established in this circuit in Andrews v. Lakeshore Rehab. Hosp., 140 F.3d 1405, 1411-13 (11th Cir. 1998),  that the 1991 amendments to § 1981 include retaliation for complaining of race discrimination. Tucker v. Talladega City Schools, 171 Fed. Appx. 289, 295, 2006 WL 688967 at *5 (11th Cir. 2006) (unpublished opinion) ("Andrews does establish that § 1981 encompasses a cause of action for retaliation.").  An objectively reasonable public official, therefore, would have known that retaliating against an assistant superintendent for exercising her legal right to file an EEOC charge of discrimination was prohibited by law. McCann v. Mobile County Personnel Board , No. 05-0364-WS-B, 2006 WL 1867486, *15 (S.D.

---

[11]  When asked in his deposition about the duties of the assistant superintendent, Kelley agreed that the assistant superintendent performed a list of tasks and "the other duties assigned by the superintendent."  Kelley Dep. at page 68: 15-17.

Ala. July 6, 2006) ("As <u>Andrews</u> was decided in 1998, the proposition that it is unlawful under Section 1981 to retaliate against an employee for complaining of race discrimination was clearly established when Haley and Turner acted in early 2004."); <u>see also</u> <u>Foley v. University of Houston System</u>, 355 F.3d 333, 340 (5th Cir. 2003) (affirming denial of qualified immunity on a § 1981 retaliation claim).

With respect to the § 1983 claim for violation of § 1981 as asserted against the Board, liability can attach to the Board only if the alleged retaliation by its employee was caused by an "official policy" or "custom" of the Board. <u>See</u> <u>Monell v. Dep't of Social Serv.</u>, 436 U.S. 658, 690-92 (1978).

Upon careful review of the briefs submitted in support of and opposition to summary judgment, it appears that none of the parties have briefed the issue of an alleged policy or custom of retaliation. Although the Defendants clearly address a policy or custom with respect to race and gender discrimination in their initial brief, stating, "Plaintiff cannot show an official policy or custom of discrimination against blacks or women," Brief in Support of Summary Judgment at page 29, they do not refer to retaliation.  Unlike with the defense of qualified immunity, there appears to be no broader language that also would encompass as a ground for summary judgment that there was no policy or custom of retaliation.  Not surprisingly, therefore, in her response to the Motion for Summary Judgment, Marshall contends that Kelley, in his capacity as Superintendent was the final policymaker for the Daleville City Board of education in the hiring of Nichols as Athletic Director, but does not advance any specific argument that Kelley established a policy or custom of retaliation which would bind the Board for purposes of a retaliation claim.

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. <u>Id.</u> at 322-324.  In this case, the court must conclude that in failing to address in any way the issue of a policy or custom with regard to any retaliation claim, the Defendants have not sufficiently met their burden to move for summary judgment on this issue.

Even if the court were to consider the Defendants to have adequately moved for summary judgment on the ground that there is no policy or custom of retaliation, the court would still find that summary judgment is due to be denied as to the Board.  While the Defendants have argued that there is no pattern of discrimination, or presumably retaliation, Marshall has chosen a different method of proving a policy or custom.  In connection with her other claims, Marshall has argued that a policy or custom is established in this case because Kelley was the final decision maker.  <u>See</u> <u>Morro v. City of Birmingham,</u> 117 F.3d 508, 514 (11th Cir. 1997) (Section 1983 liability may be imposed when the person who acts "possesses final policymaking authority over the relevant subject matter."), <u>cert. denied</u>, 523 U.S. 1020 (1998).

Based on deposition testimony, it appears that the superintendent made the assignment of duties to the assistant superintendent.  Kelley Dep. at page 68: 15-17.  In their brief, the Defendants state that the assignment of duties may be done by the Superintendent without action by the Board, pursuant to <u>Ala.</u> <u>Code</u> § 16-12-16.  <u>See</u> Brief in Support of Motion for Summary Judgment, page 5 n.1.  Drawing all reasonable inferences in favor of the non-movant, therefore,

Kelley was the final decision maker for purposes of establishing a policy or custom of the Board in the assignment of duties of the assistant superintendent.  Because Marshall has established a policy or custom sufficient to hold the Board liable, summary judgment is due to be DENIED as to the § 1981 retaliation claim against the Board on this alternative basis.

## V. <u>CONCLUSION</u>

For the reasons discussed, it is hereby ORDERED as follows:

1.  The Motion to Strike (Doc. #47)  is GRANTED as to Marshall's testimony as to Gurley's report of Kelley's statement and is DENIED as moot in all other respects.

2.  The Motion for Summary Judgment (Doc. #32) is GRANTED as to the Title VII, 1981 and equal protection claims based on denial of the assistant superintendent, superintendent, and athletic director positions and on the equal protection retaliation claim, and judgment is entered in favor of the Daleville City Board of Education and Andrew R. Kelley and against Diane Marshall on those claims.

3.  The Motion for Summary Judgment (Doc. #32) is DENIED as to all retaliation claims asserted pursuant to Title VII and § 1983 for violation of § 1981.

The case will proceed against all Defendants on Marshall's claims of retaliation for complaining of race and gender discrimination in violation of Title VII, and her § 1983 claim of retaliation for complaining of race discrimination in violation of 42 U.S.C. § 1981.

Done this 24th day of July, 2006.

        /s/ W. Harold Albritton            
W.  HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE